JS-6

Jesse C. Swanhuyser (SBN 282186)
jesse@sycamore.law
SYCAMORE LAW, INC.
1004 O'Reilly Avenue
San Francisco, CA 94129
(415) 360-2962

Erina Kwon (Bar No. 235079)
erina@lawaterkeeper.org
Benjamin Harris (Bar No. 313193)
ben@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street, Suite 250
Los Angeles, CA 90012
(310) 394-6162

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>Plaintiff,<br><br>v.<br><br>SAINT-GOBAIN NORTH AMERICA; GS II, Inc.; CERTAINTEED HOLDING CORPORATION; and CERTAINTEED, LLC,<br><br>Defendants. | Case No. 2:25-cv-03942<br><br>~~[PROPOSED]~~ CONSENT DECREE |

CONSENT DECREE

# CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Defendants CertainTeed, LLC, (collectively with Saint-Gobain North America, GS II, Inc., and CertainTeed Holding Corporation, ("Defendants") own and/or operate an industrial facility located at 1431 West E Street in Wilmington, California, under Waste Discharger Identification number 4 19I009176 ("Facility");

**WHEREAS**, the Facility's industrial activities consist of manufacturing asphalt roofing shingles, including algae-resistant varieties. The Facility is categorized under Standard Industrial Classification ("SIC") Code 2952, covering Asphalt Felts and Coatings;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 adopted by the State Water Resources Control Board ("State Board"), Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit"),[1] and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

**WHEREAS**, Defendants' operations at the Facility result in discharges of storm water associated with industrial activity to waters of the United States and are properly subject to regulation under the General Permit and the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, on February 26, 2025, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendants, its registered agent, the Administrator of the United States Environmental Protection Agency ("U.S. EPA"), the Executive Director of the State Board, the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the United States Department of Justice ("U.S. DOJ"), alleging violations of the General Permit and Clean Water Act;

**WHEREAS**, on May 2, 2025, LA Waterkeeper filed a complaint against Defendants in the Central District of California ("Court"), Civil Case No. 2:25-cv-03942 ("Complaint");

**WHEREAS**, the Complaint alleged violations of the General Permit and the Clean Water Act for Defendants' discharges of pollutants into storm drains to surface waters, including the Port of Los Angeles Inner Harbor, connected coastal waters, and the Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS**, Plaintiff and Defendants (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree ("Consent Decree") setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.     Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.     The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.     LA Waterkeeper has standing to bring this action.

5.     The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties related to compliance with the provisions of this Consent Decree for the Term (as defined below) including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

## I.     OBJECTIVES

6.     It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint.

## II.     AGENCY REVIEW AND DEFINITIONS

### A.     AGENCY REVIEW OF CONSENT DECREE

7.     Agency Review. Plaintiff shall submit this Consent Decree to the U.S. DOJ and the U.S. EPA (collectively the "Federal Agencies") for review as required by 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days

3

[CONSENT DECREE]

from receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

8. <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by <u>40 C.F.R. § 135.5</u>, in order to coordinate the Court's calendar with the 45-day Agency Review Period.

9. <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall file the Consent Decree with the Court for entry.

10. <u>Filing of Dismissal</u>.  Provided the Court retains jurisdiction over the Complaint as requested in paragraph 5, Plaintiff shall dismiss the Complaint in its entirety, with prejudice, immediately after the Court approves and enters this Consent Decree, pursuant to <u>Federal Rule of Civil Procedure 41(a)(2)</u>.

**B.    DEFINITIONS**

11. Unless otherwise expressly defined herein, terms used in this Consent Decree that are defined in the CWA or in regulations or rules promulgated under the CWA shall have the meaning assigned to them in the statutes, regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

    a.    "Advanced Treatment System" means a storm water treatment system that either:

       i.    includes all of the following processes: (1) pre-settling, (2) polymer- or electronically-assisted coagulation (i.e., particle

flocculation), (3) sand or other media filtration (e.g., perlite, activated carbon), and (4) ion exchange; or

    ii.   another advanced storm water treatment system that, based on independent third-party analyses, will reduce pollutant concentrations in storm water discharged from the Facility below the Numeric Limits in Table 1 (below). The third-party under this definition shall be selected by CertainTeed and be qualified and experienced in the design and implementation of storm water treatment systems used to address similar contaminants and design parameters relevant to the Advanced Treatment System here (if this provision is triggered). Such selected third-party shall be subject to LA Waterkeeper approval, such approval not to be unreasonably withheld.

    b.   "BAT" means the Best Available Technology Economically Achievable.

    c.   "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

    d.   "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

    e.   "Consent Decree" includes any and all attachments, and/or documents incorporated by reference.

    f.   "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

g.   "Drainage Areas" means the three (3) drainage areas at the Facility, referred to herein as DA-1, DA-2, and DA-3, the approximate extent of which are depicted at IMAGE 1 (below) in green, orange, and pink respectively.

h.   "Discharge Point(s)" means the storm water discharge location(s) designated in the then-current SWPPP for the Facility, which at a minimum shall include the four (4) "release point valves" along the containment curb at DA-3 and the "discharge plug" used to impede discharges from DA-2 unless and until the five (5) locations are modified to completely and permanently prevent discharge.

i.   "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

j.   "Entry Date" means the day this Consent Decree is approved and entered by the Court.

k.   "Forecasted Storm Event" means a forecasted rain event with a fifty percent (50%) or greater probability of precipitation above 0.1 inches for the following 24-hour period as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "East Wilmington Park, Wilmington, CA, 90744, USA."[2]

l.   "MIP" means a Monitoring Implementation Plan.

m.   "Operating Hours" means 6:00 a.m. to 10:00 p.m. Monday through Friday, exclusive of holidays and plant curtailment periods.

n.   "PPT" means Pollution Prevention Team.

---

[2] Detailed forecast available at https://forecast.weather.gov/MapClick.php?lat=33.7821&lon=-118.261&unit=0&lg=english&FcstType=graphical

6

CONSENT DECREE

o.  "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

p.  "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

q.  "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

r.  "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

s.  "Storm Water Retention Area(s)" refer to the low spots in DA-2 and DA-3 in which storm water pools (i.e., is retained or detained on site) prior being discharged from the Facility.

t.  "Sweeper" means the mechanical sweeping unit (Tennant Model S30 Rider) currently used at the Facility;

u.  "SWPPP" means a Storm Water Pollution Prevention Plan.

v.  "Term" means the period between the Effective Date and the "Termination Date."

w.  "Termination Date" means the latest of:

    i.  June 30 following three (3) years from the Effective Date;

    ii.  June 30 following two (2) years after an Advanced Treatment System is fully installed, operational, and optimized (if applicable);

    iii.  seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to the anticipated date of termination; or

CONSENT DECREE

iv.     seven (7) days from Defendants' completion of all payments and other affirmative duties required by this Consent Decree.

x.     "Wet Season" means the period beginning October 1st of any given calendar year and ending April 30th of the following calendar year.

IMAGE 1



## III.     COMMITMENTS OF THE SETTLING PARTIES

12.     <u>Non-Storm Water Discharge Prohibition</u>. Defendants may discharge authorized non-storm per General Permit § IV, and shall comply with the General

CONSENT DECREE

Permit's Discharge Prohibitions, including those related to discharges of non-storm water.

### A.    STORM WATER POLLUTION CONTROLS

13.    Current and Additional Best Management Practices. At all times, Defendants shall implement BMPs identified in the Facility's then-effective SWPPP and implement additional BMPs described in this Consent Decree, and additional BMPs as may be required to comply with the provisions of this Consent Decree, the General Permit, and the Clean Water Act.

14.    Duty to Inspect, Maintain, Repair, and/or Replace BMPs. Defendants shall inspect, maintain, repair and/or replace BMPs to comply with this Consent Decree, the General Permit, and the Clean Water Act.

15.    Rain Gauge/Sensor. Defendants shall install and maintain an electronic rain gauge or sensor at the Facility within ten (10) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendants shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree, except in the event of equipment malfunctions caused by something outside of Defendants' control.  In the event of a rain gauge malfunction, Defendants shall use rain data from National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "East Wilmington Park, Wilmington, CA, 90744, USA" for purposes of precipitation quantities and timing.

16.    Structural and Non-Structural BMPs for the Facility. As soon as possible but no later than forty-five (45) days of the Effective Date, unless otherwise noted, Defendants shall develop and implement the following BMPs at the Facility:

       a.    Ensure pavement or asphalt conditions throughout the Facility facilitate the effectiveness of sweeping and/or vacuuming BMPs;

b.    Ensure that permanent concrete berms and curbs, and similar physical barriers, are maintained to eliminate storm water discharges from any point other than Discharge Points;

c.    Ensure all galvanized roof surfaces and siding at the Facility that may come into contact with storm water are removed, replaced, and/or have been coated;

d.    Sweeping Protocols (Year-Round). Defendants shall develop and implement sweeping protocols at least twice weekly at the locations described below at romanettes (i) and (ii). The sweeping program shall include operation of the Sweeper in areas where its size and technology are effective at removing industrial pollutants, and backpack-mounted vacuum in all other areas (as detailed in *Attachment A: Sweeping Protocol Details*), including without limitation:

i.    all indoor areas from which dust, debris and other industrial materials may be tracked out and exposed to storm water, including without limitation all plant production areas;

ii.    all impervious outdoor areas, including covered and uncovered areas of industrial activity, including without limitation shipping and receiving areas, loading and unloading areas, material storage areas, finished goods storage areas, areas used for storage and/or maintenance of industrial equipment (e.g., forklifts), waste collection and storage areas, and all locations where the site's industrial emissions may be deposited within the Facility's boundary.

e.    Remove all unused, inutile, and/or abandoned racks, vehicles, equipment, paint and non-containerized waste scrap materials from the entire Facility. Alternatively, Defendants may securely

cover these industrial materials/equipment when stored outdoors with impermeable covers that are weighted or tied down to prevent contact with storm water;

 f. All equipment and vehicle maintenance occurring during the Wet Season must be performed indoors or under a storm resistant shelter unless such maintenance is required for safe operation of the Facility. Defendants shall immediately contain, capture, and clean up all waste materials (e.g., fluids, dust/particulates) resulting from outdoor maintenance outside of the Wet Season; and

 g. Wet Season Specific BMPs

  i. <u>Wet Season Inspections & Repairs</u>. Prior to the start of the Wet Season, no later than September 15th of each Reporting Year during the Term, and once monthly during the Wet Season, Defendants shall inspect and as appropriate, clean, replace and/or repair: (a) air emission control devices consistent with the SWPPP (e.g., vacuum system shrouds, fume and mist abatement equipment, baghouse filters, hoppers/outlets); (b) pipes and ducts used to transport industrial materials; (c) drop inlet filters (as appropriate and if determined needed); (d) straw wattles; and (e) all similar structural BMPs employed at the Facility. Defendants shall prepare and maintain a written log for each inspection, which shall include relevant observations and responses/remedial actions taken.

  ii. <u>Pre-Storm Protocol</u>. As close to a Forecasted Storm Event as feasible in light of the Operating Hours, Defendants shall inspect all structural storm water-specific BMPs, e.g.,

wattles, filters, deployed at the Facility, and cover all industrial materials, including without limitation exposed wastes, debris, and scrap, and trash cans sufficient to prevent exposure to rainfall, e.g., tarps, lids, or move materials indoors or into a storm resistant shelter (as detailed in *Attachment B: Pre-Storm Inspection and Exposure Minimization Protocols*);

    iii. <u>Pre-Storm Sweeping Protocols</u>. During the Wet Season, Defendants shall ensure the sweeping occurring pursuant to subparagraph 16(d) above occurs as close as feasible to the Forecasted Storm Event in light of the Operating Hours and shall conduct supplemental sweeping within Operating Hours if necessary pursuant to subparagraph 16(d)(ii) prior to each Forecasted Storm Event unless conditions are unsafe. Darkness does not, alone, make conditions unsafe.

**B.    STORM WATER SAMPLING AND MONITORING**

17.    <u>Storm Water Retention Area Calculations</u>. Within forty-five (45) days of the Effective Date, Defendants shall submit to LA Waterkeeper for review and comment a detailed narrative description and map (or maps) with the information required by subparagraphs (a) to (d) below:

    a.    the approximate area covered by storm water in the Storm Water Retention Areas;

    b.    descriptions and precise locations of all Discharge Points from DA-2 and DA-3;

    c.    the volume of storm water (and area of ponding) that will interfere with industrial operations and would trigger Facility staff to release/discharge storm water; and

　　　　d.　　the volume of rainfall over a 24-, 48-, and 72-hour period that would result in unacceptable ponding that would trigger Facility staff to release/discharge storm water.

18.　　Evaluation of Retention BMPs. For each rain event during the Term with a reasonable potential to exceed the retention capacity of DA-2 and DA-3 as determined per subparagraph 17(d) but does not result in a discharge from DA-2 or DA-3, Defendants shall inspect the Storm Water Retention Areas, and document (in date/time stamped photos and/or video) the extent of ponding, and relevant precipitation information.

19.　　Storm Water Sample Collection At DA-1. During the Term, Defendants shall collect samples of storm water discharges from DA-1 from at least four (4) Qualifying Storm Events, including the first two (2) Qualifying Storm Events during the first half of the Reporting Year and the first two (2) Qualifying Storm Events during the second half of the Reporting Year. If, due to lack of Qualifying Storm Events, fewer than two (2) Qualifying Storm Events are collected in the first half of a Reporting Year, that shall be compensated for by collecting an additional sample from an additional Qualifying Storm Event during the second half of a Reporting Year, until a total of four samples is collected for any Reporting Year occurring during the term of this Agreement.

20.　　Storm Water Sample Collection At DA-2 and/or DA-3. Defendants shall collect *representative* samples of storm water discharged from DA-2 and DA-3 each and every time water is discharged during the Term.

21.　　Timing. Sampling per paragraph 20 shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5.

22.　　Sampling Parameters. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1 unless modified pursuant to paragraph 23 below. Should Defendants intend to conduct sampling for any additional parameter(s) that are provided in 40 CFR § 131.8 and/or

13

CONSENT DECREE

in the General Permit as a result of changed operations, a revised pollutant source assessment, or new mandate from a regulatory agency, such parameter(s) shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below).

23. Where the concentration of a pollutant specified in Table 1 is "non-detect" in three consecutive samples from Qualifying Storm Events collected from the same Drainage Area, Defendants may eliminate the pollutant from future laboratory analyses of samples from the same Drainage Area without violating this Consent Decree. Defendants, at their sole discretion, may direct a third-party consultant to provide a technical report evaluating whether and to what extent off-site background pollutant concentrations may be affecting the pollutant concentrations detected in storm water samples taken at a Facility ("Background Concentration Report"). Based on the data analysis in the Background Concentration Report, Defendants may propose removal of a pollutant from future laboratory analyses without violating this Consent Decree where the concentration of the pollutant specified in Table 1 does not exceed the off-site background pollutant concentrations in two (2) consecutive samples from Qualifying Storm Events. Upon receipt of Defendants' proposal, and the supporting technical report, Plaintiff shall have twenty-one (21) Days to review and provide written comments to Defendants. If Plaintiff does not oppose Defendants' proposal in writing within the 21-Day review period, Defendants may remove the pollutant from future laboratory analysis. If Plaintiff does object, the Parties shall resolve their differences pursuant to the technical dispute resolution provisions of Section IV.

24. <u>Laboratory and Holding Time</u>. Except for pH samples, Defendants shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

CONSENT DECREE

25.	Detection Limit. Defendants shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

26.	Reporting. Defendants shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and to LA Waterkeeper per subparagraph 30(c).

27.	Documentation of Inability to Sample. If a Forecasted Storm Event results in significant rainfall during Operating Hours, but Defendants are unable to sample because insufficient discharge occurs, Defendants shall document the inability to sample by taking photographs at each Storm Water Retention Area and all Discharge Points. Defendants shall maintain those photographs along with the rain/ gauge sensor data and produce them subject to the biannual reporting requirements (see paragraph 30 below).

C.	REDUCTION OF POLLUTANTS IN DISCHARGES

28.	Table 1 Numeric Limits.

TABLE 1[3]

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| total suspended solids | 100 mg/L | U.S EPA Benchmark/ NAL |
| oil & grease | 15 mg/L | U.S EPA Benchmark/ NAL |
| pH | 6.0-9.0 SU | U.S EPA Benchmark/ NAL |
| copper | 0.0332 mg/L | NAL |
| zinc | 0.26 mg/L | NAL |
| cadmium | report only | n/a |
| lead | report only | n/a |
| titanium | report only | n/a |

[3] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for TSS is either increased to 110 mg/L or decreased to 90 mg/L, such new NAL, and not 100 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for TSS being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

29.     Table 1 Exceedances. An "Exceedance" of Table 1 occurs where the concentration of any pollutant in any storm water sample from the Facility exceeds the applicable numeric limit contained in Table 1. An Exceedance shall constitute a Trigger Event.

30.     Biannual Reports.  On July 31 and January 31, Defendants shall send a written report with LA Waterkeeper covering the preceding six (6) months. Each report shall contain:

a.     Identification/description of all BMPs being implemented pursuant to this Consent Decree, including with representative photographs that each BMP has been implemented;

b.     A statement regarding Defendants' ability or inability to collect storm water samples from rain events documented at >0.1 inch during Operating Hours; and

c.     The complete laboratory reports for all samples collected at the Facility, including a table summarizing the results and identifying each exceedance of limits in Table 1.

31.     Action Plan Triggers and Submission. As of the Effective Date, and for the remainder of the Term, Defendants shall prepare and submit to LA Waterkeeper a complete Action Plan within forty-five (45) days of any of the following "Trigger Event(s):"

a.  Defendants have an unauthorized non-storm water discharge, as referenced in paragraph 12;

b.  storm water sample results demonstrate an Exceedance of Table 1 limits as defined above; or

c.  after an Advanced Treatment System is fully installed, operational, and optimized, if ever, the Advanced Treatment System discharges untreated storm water.

16
CONSENT DECREE

32.    Action Plan Requirements. A complete Action Plan shall include, at a minimum, the following:

    a.  A description of the Trigger Event(s), including the identification of any pollutant(s) discharged in excess of the numeric limit(s);

    b.  A description and narrative analysis of the cause of the Trigger Event(s), including an evaluation of existing BMPs as designed, *and* as implemented;

    c.  A narrative evaluation of effectiveness of BMPs, including the extent to which the site's existing suite of BMPs achieve BAT-level pollutant reductions;

    d.  The detailed description of additional or revised BMPs that shall be implemented to address the cause of the Trigger Event(s); and

    e.  detailed implementation schedule that, unless the Parties agree in writing to a later implementation date, ensures all additional/revised BMPs are implemented as soon as possible, and in no event longer than ninety (90) days from Action Plan submission. At the following biannual report per paragraph 30, each of the BMPs set forth in the Action Plan shall be confirmed in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan

33.    The first Action Plan (if any) required during the Term due to an Exceedance of one or more Table 1 limits must include the following BMPs and monitoring provisions for the drainage area(s) where the Exceedance(s) occurred:

    a.  Design and implementation schedule(s) for the installation and maintenance of coverage that prevents contact with storm water for all industrial materials that can be feasibly covered, which for purposes of this paragraph does not include extremely large items

17
CONSENT DECREE

for which cover is not typically possible, e.g., manufacturing buildings, warehouses, large above-ground storage tanks;

b. Sweeping protocols requiring additional sweeping beyond those described in subparagraph 16(d); and

c. Enhanced storm water sample monitoring, which must include sampling and analysis of the first four (4) Forecasted Rain Events.

34. The second Action Plan (if any) required during the Term due to an Exceedance of one or more Table 1 limits shall include a plan for the implementation, operation, and maintenance of an Advanced Treatment System that is designed to:

a. treat the 95th percentile 24-hour precipitation event based upon local, historical precipitation data and records for the Drainage Area(s) from which the relevant sample(s) was/were collected; and

b. reduce pollutant concentrations to achieve compliance with all Table 1 numeric limits.

35. Action Plan Review. LA Waterkeeper shall have thirty (30) days upon receipt of Defendants' complete Action Plan to provide Defendants with comments and proposed revisions. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions (if any) to an Action Plan, Defendants shall accept them or justify in writing why any comment/proposed revision is not appropriate for incorporation. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy or "completeness" of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

36. Action Plan Implementation. Within fourteen (14) days of implementing each updated, revised, or new BMPs set forth in the Action Plan, Defendants shall

confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

### D.   VISUAL OBSERVATIONS

37.   <u>Visual Observations Records</u>. Defendants shall maintain observation records, including photographs, to document compliance with Section XI.A.1 and XI.A.2 of the General Permit. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs of all the foregoing.  Defendants shall provide LA Waterkeeper with a copy of those records within fourteen (14) days of receipt of a written request from LA Waterkeeper for those records.

### E.   TRAINING AND PLANS

38.   <u>Employee Training Program</u>. Within thirty (30) days of the Effective Date, Defendants shall have in place, or develop if needed, and implement an employee training program ("Training Program") that ensures: (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree; and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree. The Training Program must include, at a minimum, the following:

   a.   <u>Materials</u>. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendants' personnel to ensure effective implementation of all BMPs at the Facility;

b.     Language. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendants shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c.     Training Frequency. Training shall be provided by a qualified individual, such as the site environmental manager, familiar with the requirements of this Consent Decree and the General Permit, shall be conducted in accordance with the requirements of the General Permit and the Facility's SWPPP, and shall be repeated as in accordance with the requirements of the General Permit to ensure that all relevant employees are familiar with the requirements of this the General Permit and the Facility's SWPPP, which incorporate provisions of this Consent Decree. All relevant new staff shall receive this training in accordance with the requirements of the General Permit;

d.     Sampling Training. Defendants shall designate an adequate number of employees to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e.     Visual Observation Training. Defendants shall designate an adequate number of employees and provide training on how and when to properly conduct and document visual observations to comply with the terms of this Consent Decree, including without limitation to comply with paragraph 37, and the General Permit;

[CONSENT DECREE

f.    Non-Storm Water Discharge Training. Defendants shall train all employees at the Facility to identify, document, and report non-storm water discharges;

g.    Employees. All non-clerical employees at the Facility shall participate in the Training Program annually. New employees shall participate in the Training Program within thirty (30) days of their hiring date; and

h.    Records. Defendants shall maintain training records to document compliance with this paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request subject to the removal or redaction of personally identifying or otherwise confidential information as needed.

39.    SWPPP Revisions.

a.    Initial SWPPP Revisions. Defendants shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree (including a formal written policy regarding discharges from DA-2 and DA-3 per paragraphs 17 and 18) and the General Permit. The complete, updated SWPPP shall be submitted to LA Waterkeeper for review and comment within sixty (60) days of the Effective Date and must include, without limitation, the following elements:

i.    A revised description and assessment of pollutant sources, including each applicable component required by Sections X.G.1 and 2 of the General Permit;

ii.    A description of each BMPs designed and implemented at the Facility, including each applicable component required by Section X.H.4 of the General Permit;

21

CONSENT DECREE

     iii.     A set of site maps that comply with Section X.E of the General Permit and provisions of this Consent Decree, including accurately depicting each Drainage Area and storm water flow patterns/direction, and each Discharge Point;

     iv.     A MIP as required by Sections X.I and XI of the General Permit;

     v.     A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

b.    <u>Additional SWPPP Revisions</u>.

     i.     Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendants shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for review and comment.

     ii.     Within thirty (30) days after any changes in industrial activities or sources of industrial pollutants, changes to Drainage Areas and/or Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendants shall revise the then-current SWPPP to reflect such changes

and submit the complete, updated SWPPP to LA Waterkeeper for review and comment.

    c.    <u>Review of SWPPP</u>.  For any SWPPP updates pursuant to subparagraphs a. and b. above, LA Waterkeeper shall have thirty (30) days upon receipt of Defendants' complete SWPPP to provide comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendants shall consider and either accept each of the comments and proposed changes or justify in writing why a change is not incorporated. The fact that a SWPPP has been uploaded to SMARTS is not a justification for rejecting or refusing a proposed modification. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendants shall upload the revised SWPPP to SMARTS.

    **F.**    **COMPLIANCE MONITORING AND REPORTING**

40.    <u>Site Inspections</u>. LA Waterkeeper may conduct one annual site inspection each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendants' compliance with this Consent Decree, and provided a site inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional site inspection after Plaintiff's written request. Plaintiff shall not unreasonably request, and Defendants shall not unreasonably deny, one additional site inspection. Any site inspection shall occur during Operating Hours, and LA Waterkeeper will provide Defendants with at least

forty-eight (48) hours' notice. For any site inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at paragraph 67. During the Wet Weather inspection, Plaintiff may request, where possible, that Defendants collect samples of industrial storm water from the Facility's designated Discharge Points as referenced in the then-effective SWPPP to the extent such discharges are occurring. Waterkeeper's representative(s) may observe any sample(s) being collected by Defendants' representative. LA Waterkeeper shall be permitted to take photographs or video recording during any site inspection, subject to request from Defendants not to photograph or video particular areas of the Facility or operations due to confidential business reasons. Any inspection shall be subject to a confidentiality agreement in similar substance and form to the agreement attached hereto as Exhibit 1.

41.    Document Provision. During the Term, Defendants shall notify and submit documents to LA Waterkeeper as follows:

a.    copy LA Waterkeeper, by electronic mail to the individual(s) designated below at paragraph 67, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences (except automated or non-substantive replies and confirmations), or any documents related to General Permit compliance at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

b.    Within fourteen (14) days of receipt by Defendants, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at paragraph 67, any compliance document, inspection

report, written communication and/or correspondence (except automated or non-substantive replies and confirmations), or any document related to the General Permit compliance at the Facility received by Defendants from the Regional Board, the State Board, and/or any state or local agency, county, municipality.

42.   Compliance Monitoring. Defendants shall partially defray costs associated with Plaintiff's monitoring of Defendants' compliance with this Consent Decree during the Term by paying twelve thousand dollars ($12,000.00) within forty-five (45) days of the Entry Date. Payment pursuant to this paragraph shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street, Suite 250, Los Angeles, CA 90012. Please include the Facility's name and WDID on the payment. Failure to submit payment as required under this paragraph will constitute breach of the Consent Decree.

### G.   ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST

43.   Environmentally Beneficial Project. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in Los Angeles River watershed Defendants shall make a payment totaling thirty-three thousand dollars ($33,000.00) to the Marine Mammal Care Center made within forty-five (45) days of the Entry Date, payable to "Marine Mammal Care Center" and sent via overnight mail to: Marine Mammal Care Center, 536 W. 25th Street, Box 272, San Pedro, California 90732-4464 ("Marine Mammal Care Center"). Failure to submit payment as required under this paragraph will constitute breach of the Consent Decree.

44.   LA Waterkeeper's Fees and Costs. Defendants shall pay a total of one hundred thousand dollars ($100,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs,

reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within ten (10) days of the Entry Date. The payment shall be made payable to: Sycamore Law, Inc. ("Sycamore Law") and delivered by overnight carrier to 1004 O'Reilly Ave. San Francisco CA 94129. Failure to submit payment as required under this paragraph will constitute breach of the Consent Decree.

45.   <u>Missed Deadlines</u>. In the event that Defendants fail to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, Defendants shall pay a stipulated payment of three hundred and fifty dollars ($350.00) per day following notice and an opportunity to cure. Such stipulated payments shall be made by check payable to: Marine Mammal Care Center, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in paragraph 43. Payment shall be sent via overnight mail to: Marine Mammal Care Center, 536 W. 25th Street, Box 272, San Pedro, California 90732-4464. Defendants agree to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

46.   Notwithstanding any provision in this Consent Decree regarding the timing of payments to LA Waterkeeper, the Marine Mammal Care Center, and Sycamore Law (collectively, "Payees"), the period for any payment(s) due under this Consent Decree shall not begin to run unless and until Payees have fully complied with Defendants' payment set-up requirements as follows:

    a.   Payees must complete and submit the Add Vendor – ACH Payment form (attached hereto as Exhibit 2); and

    b.   Payees must provide the following supporting documents to Defendant:

        i.   A completed IRS Form W-9; and

        ii.   One of the following documents containing Payees' banking information: (i) invoice with banking

26

CONSENT DECREE

information; (ii) signed company letterhead with banking information; (iii) bank letterhead with banking information; or (iv) a voided check.

    c.    For the avoidance of doubt, no payment obligation under this Consent Decree shall be triggered, and no payment period shall commence, until an individual Payee has been successfully set up in Defendants' payment system. The Parties agree to cooperate in good faith to facilitate timely completion of these requirements.

## IV.  DISPUTE RESOLUTION

47.    Meet and Confer. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

48.    Settlement Conference. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in paragraph 47, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

49.    In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.  MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

50.    Plaintiff's Waiver and Release of Defendants. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf

27

CONSENT DECREE

and on behalf of its officers and directors, release Defendants, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised, or could have been raised based upon the facts known or reasonably knowable to Plaintiff as of the Effective Date, in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

51.    Defendants' Waiver and Release of Plaintiff. In consideration of the above, upon the Effective Date of this Consent Decree, Defendants, on their own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

52.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, U.S. EPA, or any other judicial or administrative body on any matter relating to Defendants' compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.    MISCELLANEOUS PROVISIONS

53.    No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses it may have to any alleged violations that may be raised in the future.

54.    Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy

28

CONSENT DECREE

and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

55. Authority. The undersigned representatives for Plaintiff and Defendants certify that they are fully authorized by the Party whom they represent to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

56. Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

57. Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

58. Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

59. Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

60. Choice of Law. The laws of the United States shall govern this Consent Decree.

61. Diligence. Defendants shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

CONSENT DECREE

62.     Effect of Consent Decree. Compliance with this Consent Decree does not mean that Defendants are complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

63.     Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

64.     Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

65.     Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendants shall notify Plaintiff within ten (10) days of any assignment.

66.     Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a force majeure event. A force majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A force majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party

seeking to rely upon this paragraph 66 to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the force majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve, remove, or otherwise overcome any force majeure event.

67.   Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Defendants: |
|---|---|
| Los Angeles Waterkeeper | Saint-Gobain Corporation |
| Benjamin Harris | Brett Slensky |
| Erina Kwon | 20 Moores Road |
| 360 E 2nd St., Suite 250 | Malvern, PA 19355 |
| Los Angeles, CA 90012 | Brett.E.Slensky@saint-gobain.com |
| ben@lawaterkeeper.org | 610-893-5696 |
| erina@lawaterkeeper.org | |
| (310) 394-6162 | |
| | |
| With copies to: | With copies to: |
| Sycamore Law, Inc. | Holland & Knight LLP |
| Jesse C. Swanhuyser | Emily M. Lieban |
| 1004 O'Reilly Ave. | 560 Mission Street, Suite 1900 |
| San Francisco, CA 94129 | San Francisco, CA 94105 |
| jesse@sycamore.law | emily.lieban@hklaw.com |
| (805) 689-1469 | (415) 743-6946 |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

68.   If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline

to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____February 11_____, 2026          By _____

Bruce Reznik
Executive Director
Los Angeles Waterkeeper

Dated: _____February 11_____, 2026          By: _DJ Damberger_____

Donald J. Damberger
Vice President
GS II, Inc.

32

CONSENT DECREE

APPROVED AS TO FORM

SYCAMORE LAW, INC.

Dated: February 11, 2026

By _____
Jesse C. Swanhuyser
Attorney for Plaintiff
Los Angeles Waterkeeper

HOLLAND & KNIGHT LLP

Dated: ___February 11___, 2026

By: _____
Jose A. Almanzar
Attorney for Defendants
Saint-Gobain North America et al.

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendants.

Dated: ___March 30, 2026___

CENTRAL DISTRICT OF CALIFORNIA

_____
HONORABLE STEVE KIM
United States Magistrate Judge

33
CONSENT DECREE

**Attachment A:**
**Sweeping Protocol Details**

1.0    **Purpose**

This document details the sweeping protocols to be implemented at the Facility in accordance with Section 16.d of the Consent Decree.

2.0    **Scope**

Applies to all impervious outdoor areas and certain indoor areas at the facility, as contemplated in Section 16.d.i-ii of the Consent Decree.

3.0    **Responsibilities**

**EHS Manager / Environmental Specialist**:  Has overall responsibility for protocol implementation and compliance. This role manages the sweeping schedule, ensures both the ride-on sweeper and backpack vacuums are properly maintained and verifies compliance through periodic inspections.

**Operations Teams**:  Execute all required sweeping and vacuuming tasks at a minimum frequency of twice weekly, plus any additional pre-storm event sweeping. This includes operating the ride-on sweeper in large impervious areas and backpack-mounted vacuums in all required indoor areas and other locations inaccessible to the sweeper. Operators are responsible for accurately completing equipment logs after each use.

**Supervisors**: Verification that all scheduled sweeping and vacuuming tasks have been completed effectively within their designated areas. Supervisors must report any deficiencies, missed areas, or significant debris accumulation to the Environmental Specialist.

4.0    **Procedures**

4.1    **Sweeping Protocol**

4.1.1    The goal is to prevent pollutants from entering storm drains during rain events by implementing systematic sweeping using a ride-on sweeper that can pick up various sizes of debris ranging from dust to heavy debris and a backpack-mounted vacuum in other areas inaccessible to the sweeper.

4.2    **Sweeping Frequency**

4.2.1    Year-round, twice-weekly routine sweeping will be performed in the facility areas specific in Section 2 above.

## Attachment A:
## Sweeping Protocol Details

**4.2.2**   During the Wet Season (October 1 to April 30), the sweeping shall be performed as close as feasible to a Forecasted Storm Event.  Forecasted Storm Event means a forecasted rain event with a fifty percent (50%) or greater probability of precipitation above 0.1 inches for the following 24-hour period as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "East Wilmington Park, Wilmington, CA, 90744, USA."[1] additional sweeping (more than the 2x/week) will be performed before Forecasted Storm Events, if needed unless conditions are unsafe.

**4.3**   **Sweeper Checklist (to be completed for each sweeping event)**

| ITEM | INSPECTED (YES/NO) |
|---|---|
| **Check fuel level** | |
| **Check hydraulic fluid level** | |
| **Check engine coolant level** | |
| **Check engine oil level** | |
| **Check condition of the main brushes** | |
| **Check for debris wrapped around the main brush** | |
| **Check condition of main brush compartment right hand skirt for damage and wear** | |
| **Check condition of main brush compartment left hand skirt for damage and wear** | |
| **Check the side brush** | |
| **Check for debris wrapped around the side brush** | |
| **Check condition of the side brush skirt** | |
| **Check condition of radiator and hydraulic coolers fans** | |
| **Check condition of headlights taillights and safety lights** | |
| **Check steering and breaks for proper operation** | |

---

[1] Detailed forecast available at https://forecast.weather.gov/MapClick.php?lat=33.7821&lon=-118.261&unit=0&lg=english&FcstType=graphical

## Attachment A:
## Sweeping Protocol Details

**4.4    Sweeping Protocol Checklist (to be completed for each sweeping event)**

| Outdoor Impervious Surface Areas and Indoor Areas with the Potential for Track-out | Swept (Yes/No) |
|---|---|
| Roll-up Door Area (doors that provide fork-truck ingress and egress from building to outdoor areas) | |
| Asphalt Unloading Area | |
| Hot Oil Heater Process Area | |
| Filler Heater Building Process Area | |
| Filler Unloading Area | |
| Granule Unloading Area | |
| Coater Mist Eliminator (CECO) Area | |
| Outside Plant Waste Container Area (inc. roll offs) | |
| Storm Drains (inc. wattles, sandbags, socks) | |
| Outside Steel Storage Area | |
| **Shipping Areas** | **Swept (Yes/No)** |
| Truck Loading Area | |
| Truck Entry Lanes | |
| Storm Drains 1-4 | |
| Container Dock Area | |
| Finished Goods Storage Area | |
| Asphalt Unloading Area | |
| Railroad Loading Area (Trench) | |

**Date:**

**Notes:**

Consent Decree
C.D. Cal. Case No. 2:25-cv-03942

**Attachment B:**
**Pre-Storm Inspection and Exposure Minimization Protocols**

**1.0      Purpose**

This document details the pre-storm inspection protocols to be implemented at the Facility in accordance with Section 16.g.ii of the Consent Decree.

**2.0      Scope**

Applies to all impervious outdoor areas and certain indoor areas at the facility, as contemplated in Section 16.d.i-ii of the Consent Decree.

**3.0      Responsibilities**

**EHS Manager / Environmental Specialist**: Has overall responsibility for protocol implementation and compliance. This role manages and completes the inspections.

**4.0      Procedures**

The EHS Manager/Environmental Specialist to conduct an inspection as close to a Forecasted Storm Event as feasible within the Operating Hours, as contemplated in Section 16.g.ii of the Consent Decree. A Forecasted Storm Event means a forecasted rain event with a fifty percent (50%) or greater probability of precipitation above 0.1 inches for the following 24-hour period as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "East Wilmington Park, Wilmington, CA, 90744, USA."[1]

The inspection will include all structural storm-water specific BMPS (silt rocks, berms, absorbent, and covers), and include removal of debris and trash near the drains and outfalls, as well as covering exposed materials where feasible or moving items indoor under shelter.

---

[1] Detailed forecast available at https://forecast.weather.gov/MapClick.php?lat=33.7821&lon=-118.261&unit=0&lg=english&FcstType=graphical

**Consent Decree**
**C.D. Cal. Case No. 2:25-cv-03942**

**Attachment B:**
**Pre-Storm Inspection and Exposure Minimization Protocols**

4.1    Inspection Checklist (to be completed for each sweeping event)

| AREA INSPECTED - OUTDOOR IMPERVIOUS SURFACE AREAS AND INDOOR AREAS WITH THE POTENTIAL FOR TRACK-OUT | INSPECTED (YES/NO) |
|---|---|
| Roll-up Door Area (doors that provide fork-truck ingress and egresses from building to outdoor areas) | |
| Asphalt Unloading Area | |
| Hot Oil Heater Process Area | |
| Filler Heater Building Process Area | |
| Filler Unloading Area | |
| Granule Unloading Area | |
| Coater Mist Eliminator (CECO) Area | |
| Outside Plant Waste Container Area (inc. roll offs) | |
| Storm Drains (inc. wattles, sandbags, socks) | |
| Outside Steel Storage Area | |
| SHIPPING AREAS | INSPECTED (YES/NO) |
| Truck Loading Area | |
| Truck Entry Lanes | |
| Storm Drains 1-4 | |
| Container Dock Area | |
| Finished Goods Storage Area | |
| Asphalt Unloading Area | |
| Railroad Loading Area (Trench) | |

**Date:**


**Notes:**


**Consent Decree**
**C.D. Cal. Case No. 2:25-cv-03942**